J-A08002-18
J-A08003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM S. HARPER | : | |
| | : | |
| Appellant | : | No. 1992 EDA 2017 |

Appeal from the Order May 18, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0009871-1990

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM S. HARPER | : | |
| | : | |
| Appellant | : | No. 1995 EDA 2017 |

Appeal from the Order May 18, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0008371-1991

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER[*], J.

MEMORANDUM BY PANELLA, J.              **FILED NOVEMBER 19, 2018**

Appellant William S. Harper challenges the orders[1] entered in the

Delaware County Court of Common Pleas, denying his petitions for limited

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As discussed in greater detail below, the court denied Appellant's petitions for limited access to his 1991 and 1992 convictions. Appellant filed separate notices of appeal, and this Court assigned a separate docket number for each.

access to his criminal record information pursuant to 18 Pa.C.S.A. § 9122.1. **Order for limited access**. Section 9122.1 is part of the Criminal History Record Information Act (the "Act"), 18 Pa.C.S.A. §§ 9101-9183. The Act regulates the collection, compilation, maintenance, and dissemination of criminal history record information. And § 9122.1 provides an avenue for people convicted of certain misdemeanors to apply to limit dissemination of a criminal history record to only a criminal justice agency or a government agency as defined in the Act. This appeal requires us to interpret § 9122.1. After careful review, we reverse the trial court's orders, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. Appellant was arrested in 1990 for possession of cocaine. He pled guilty to a misdemeanor on July 15, 1991, and was sentenced to twelve months of intermediate punishment. Appellant was arrested again, also for possession of cocaine, in 1991. He entered a guilty plea on January 14, 1992, and was sentenced to three to twelve months' incarceration. Appellant was then arrested once more in 2011, for possession of drug paraphernalia. He pled guilty on December 12, 2011, and was sentenced to one year of probation.

Appellant, a self-employed glazier, cannot compete for public school contracts in New Jersey due to his drug convictions. *See* N.T., 5/18/17, at 4-5. So, on April 7, 2017, Appellant filed separate limited access petitions at

His appellate issues are combined in a single brief. For ease of review, we consolidate these appeals *sua sponte*.

each docket. After realizing the 2011 conviction did not qualify for relief under § 9122.1, Appellant withdrew that petition. He proceeded to a hearing on his remaining two petitions.

At the hearing, the Commonwealth opposed limiting access to Appellant's 1991 and 1992 convictions. The Commonwealth averred the statute requires a petitioner to be free of arrest or prosecution for ten years before submitting a petition for limited access. In the Commonwealth's view, because Appellant was convicted of an offense in 2011, in 2017 he was ineligible to seek limited access even for his 1991 and 1992 convictions. The trial court agreed, based on language in the statute directing the common pleas court to calculate the date "following conviction or final release from confinement or supervision, whichever is later[.]" 18 Pa.C.S.A. § 9122.1(a)(1). The court found the "whichever is later" language stripped it of discretion by requiring consideration of the most recent offense—here, Appellant's 2011 conviction. The court therefore denied both of Appellant's petitions. He filed a timely notice of appeal, and this matter is now properly before us.

Appellant's lone issue on appeal asserts the trial court incorrectly interpreted the language of § 9122.1(a)(1). Appellant asks this Court to reject the trial court's reading of the statute, and remand for a hearing on the merits of his limited access petition.

This issue raises a question of statutory interpretation. In matters of statutory interpretation, our scope of review is plenary, and our standard of

review is *de novo*. *See Commonwealth v. DeNapoli*, ___ A.3d ___, ___ 2018 WL 4907785, *1 (Pa. Super., filed October 10, 2018).

> In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. When analyzing particular words or phrases, we must construe them according to rules of grammar and according to their common and approved usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.

*Commonwealth v. Morris*, 958 A.2d 569, 578-579 (Pa. Super. 2008) (internal quotations and citations omitted).

Penal statutes are to be strictly construed. *See Commonwealth v. Rivera*, 10 A.3d 1276, 1284 (Pa. Super. 2010). "Yet, the need for strict construction does not require that the words of a penal statute be given their narrowest meaning or that legislative intent should be disregarded." *Commonwealth v. Fithian*, 961 A.2d 66, 74 (Pa. 2008) (citations omitted).

"When the parties read a statute in two different ways and the statutory language is reasonably capable of either construction, the language is ambiguous." *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016) (citation omitted). If ambiguity exists in the language of the statute, that

language should be interpreted in the light most favorable to the accused. ***See***

***Commonwealth v. Price***, 189 A.3d 423, 431 (Pa. Super. 2018). "More

specifically, where doubt exists concerning the proper scope of a penal statute,

it is the accused who should receive the benefit of such doubt." ***Id***. (internal

quotation marks and citations omitted).

Here, the statute governing orders for limited access provides, in

relevant part:

> Notwithstanding any other provision of this chapter, upon petition of a person who has been free of arrest or prosecution following conviction or final release from confinement or supervision, whichever is later, for a period of 10 years, the court of common pleas in the jurisdiction where the conviction occurred may enter an order that criminal history record information maintained by any criminal justice agency pertaining to a conviction for a misdemeanor of the second degree, a misdemeanor of the third degree or an ungraded offense which carries a maximum penalty of no more than two years be disseminated only to a criminal justice agency or a government agency as provided in section 9121(b.1) and (b.2) (relating to general regulations).

18 Pa.C.S.A. § 9122.1(a)(1).

The conflicting interpretations turn on the statute's clause, "whichever

is later." In its opinion, the trial court maintains that because of the "whichever

is later" clause, the "conviction" mentioned must relate to the petitioner's

most *recent* offense. ***See*** Trial Court Opinion, filed 8/25/17, at 5. In the court's

view, the new 2011 offense "reset the clock" on Appellant's ability to petition

for limited access to the earlier offenses. N.T. Hearing, 5/18/17, at 9. Because

Appellant did not have ten crime-free years before filing the petitions, the

court denied them.

Appellant argues the ten-year period started after he finished serving his sentence on the 1992 conviction. Appellant points to the eighteen years, from the conclusion of his sentence in 1993 until his new arrest and conviction in 2011, where he was not arrested or convicted of any new offenses. Though Appellant does not explicitly say so, this argument necessarily interprets the clause "whichever is later" as referring to "conviction or final release from confinement or supervision." Under that reading, the ten-year period simply starts after the petitioner concludes any incarceration or probationary period on the relevant offense. That ten-year period would begin anew if the petitioner is convicted of any additional crimes before ten years elapses, as Appellant was in 1992. And, after a petitioner completes a ten-year period without committing any new offenses, he becomes eligible to petition the court for limited access to his crimes. Appellant finished that ten-year eligibility period in 2003, long before he was convicted of another crime in 2011.

Both Appellant and the trial court believe *Giulian* supports their respective positions. In that case, Giulian was convicted of public drunkenness and harassment in 1997, and criminal mischief in 1998. In 2013, she petitioned the court for expungement of these summary offenses, based on a statute that governs expungement for summary convictions, 18 Pa.C.S.A. § 9122(b)(3). That statute required a petitioner to be "free of arrest or prosecution for five years following the conviction" to qualify. 141 A.3d at 1264. The Commonwealth did not object to expungement of the 1998 convictions, but opposed the expungement of the 1997 offenses. The

Commonwealth asserted Giulian did not remain free of arrest or prosecution for the five-year period immediately following her 1997 convictions, because she was arrested in 1998. Giulian's 1997 convictions were thus ineligible for expungement. The trial court denied Giulian's petition on that basis, and this Court affirmed that decision in an opinion.

On appeal, the Pennsylvania Supreme Court found the language of the expungement statute was ambiguous. The statute failed to specify whether the petitioner's arrest-free five years must *immediately* follow the conviction, or could be *any* five-year period thereafter. Because expungement statutes are intended to protect those who commit minor offenses from the hardships of having an arrest record, the Court believed the legislative intent weighed in favor of Giulian's interpretation. Further, the Court reasoned that the Commonwealth's reading would produce an irrational result—one where a petitioner like Giulian could not expunge older offenses, even if another fifty arrest-free years elapse. The Court reversed and remanded the case.

For its part, the Commonwealth disputes the relevance of **Giulian** to this case. We agree with Appellant and the trial court that it has significant similarities to the issues before us.

Here, the statutory language is ambiguous, as it is reasonably capable of two incompatible constructions. The statute, as noted, dictates that "upon petition of a person who has been free of arrest or prosecution following conviction or final release from confinement or supervision, whichever is later, for a period of 10 years, the court of common pleas in the jurisdiction where

the conviction occurred may enter an order [limiting access to the petitioner's criminal record]." The trial court interpreted the clause "whichever is later" to refer specifically to the petitioner's most recent offense. Appellant's contrary reading, that the "whichever is later" clause necessarily refers to the end of the petitioner's incarceration or supervision for the particular offense at issue, is supported by the reference to "*the* conviction" in the same sentence. We find Appellant's interpretation of this ambiguous language at least equally valid, and indeed, more convincing to this Court.

The legislative intent of the limited access statute also dictates a result favoring Appellant. Much like the expungement statute, the limited access statute intends to remove the impediments of a criminal record on employment, housing, and other activities for petitioners who have had minor, nonviolent brushes with the criminal justice system. As even the trial court acknowledges in its opinion, the limited access statute stems from "the Legislature's desire to remove the stigma of prior convictions for minor offenses in order to assist the reformed offender to obtain gainful employment and become self-sufficient." Trial Court Opinion, filed 8/25/17, at 5.

The trial court's reading yields the "unreasonable result" warned of in *Giulian*. Appellant was free of arrest or prosecution for eighteen years after his 1992 offense and release from supervision, almost twice the requirement for filing a limited access petition. Nevertheless, the trial court found Appellant ineligible to petition for limited access to these now twenty-five-year-old crimes. This cannot be the result the General Assembly intended. While

Appellant's 2011 offenses do not qualify for limited access yet, we find Appellant is eligible to petition for limited access to his 1991 and 1992 crimes.

Finally, we briefly note the Commonwealth's sub-argument that Appellant is also not entitled to a limited access order because the maximum sentence on his 1992 drug offense exceeded the relevant statutory limitations. In his reply brief, Appellant responds that he was not charged under a second offense provision, and thus not subject to a higher maximum sentence which would disqualify him from seeking a limited access order. The issue is not before us.

This appeal is intended to resolve conflicting statutory interpretations about the statute's ten-year eligibility period. Importantly, this decision does not grant Appellant's petition for limited access. Despite our decision to reverse the trial court's order on statutory interpretation grounds, we nevertheless recognize that limiting access to a petitioner's criminal record is discretionary. *See* 18 Pa.C.S.A. § 9122.1(a)(1) (providing "the court of common pleas in the jurisdiction where the conviction occurred *may* enter an order…"). Thus, we remand for a merits hearing on the petition, having resolved the legal issue of the ten-year eligibility period. The Commonwealth may present its argument to the court at that hearing.

Accordingly, we remand this case to the trial court, so that it may consider the merits of Appellant's petition.

Orders reversed. Cases remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/19/18</u>